# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| VistaPrint Technologies Limited, | Civil No. 07-2298 (JNE/JJK) |
| Plaintiff, | |
| v. | |
| 123Print, Inc.; Drawing Board (US), Inc., doing business as Stationery House, Inc.; Taylor Strategic Accounts, Inc.; | **REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STAY** |
| Defendants. | |

Gregory A. Madera, Esq., Katherine A. Moerke, Esq., Lawrence K. Kolodney, Esq., and Robert E. Hillman, Esq., Fish & Richardson PC, counsel for Plaintiff.

Martin R. Lueck, Esq., Munir R. Meghjee, Esq., and Tara Falsani Harkins, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Plaintiff VistaPrint Technologies Limited's ("VistaPrint") Motion to Stay this Action Pending Reexamination of the Patents-in-Suit by the PTO (Doc. No. 94). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and District of Minnesota Local Rule 72.1.

VistaPrint moves to stay its patent infringement claims pending reexamination of three patents underlying those claims. For the reasons stated below, this Court recommends granting the motion for a stay.

**BACKGROUND**

**I.    Factual and Procedural History**

VistaPrint is an online supplier of graphic design services and customized printed products to small businesses and other consumers. In May 2007, VistaPrint filed this action alleging infringement of three of its patents, U.S. Patent No. 6,247,011 ("the '011 Patent"), U.S. Patent No.6,631,375 ("the '375 Patent"), and U.S. Patent No. 7,120,634 ("the '634 Patent") (collectively "the patents-in-suit").[1] In response, Defendants pled noninfringement, invalidity, and unenforceability defenses and brought corresponding declaratory judgment counterclaims with respect to each of the patents-in-suit.[2] The technology claimed in the patents-in-suit is generally described as follows:

> Computerized prepress is disclosed. In one embodiment, a computerized prepress system includes three components: a server, a client and a printer. The server has stored thereon an authoring program to create a document, and a translation program to translate the document to a suitable prepress format. The client downloads the authoring program from the server to create the document, and

---

[1]    VistaPrint filed an Amended Complaint on August 8, 2007, pursuant to stipulation, adding Taylor Strategic Accounts, Inc. as a Defendant. (Doc. No. 28.) On November 1, 2007, VistaPrint filed a Second Amended Complaint, pursuant to stipulation, in order to clarify the relationship between VistaPrint and its corporate parent and to show that VistaPrint is not pursuing a claim for lost profits damages. (Doc. No. 44.)

[2]    Defendants filed a First Amended Answer and Counterclaim on August 14, 2007, (Doc. No. 32), a Second Amended Answer and Counterclaim on November 14, 2007, (Doc. No. 45), and a First Amended Answer and Counterclaim to the Second Amended Complaint on March 12, 2008. (Doc. No. 70.) The March 2, 2008 Amended Answer asserts a counterclaim for inequitable conduct.

> then uploads the document to the server for translation to the
> suitable prepress format. The printer receives the document as
> translated to the suitable prepress format from the server.

('011 Patent, Abstract; '634 Patent, Abstract.)

> Computerized client/server prepress using a downloadable
> document authoring program. A server has stored thereon a
> document authoring program. The program is adapted to download
> to a client computer and run in the browser of the client computer.
> The authoring program allows the client to create an electronic
> document, view the document in WYSIWYG [What You See Is What
> You Get] form, and upload the created document to the server for
> subsequent translation to a suitable prepress format.

('375 Patent, Abstract.) In other words, the technology involves "prepress" desktop publishing software that utilizes the internet to permit users to create and customize documents on their own computers.

On January 7, 2008, the parties filed their Joint Claim Construction Statement (Doc. No. 55), and Defendants served their original Prior Art Statement. The Court's Pretrial Scheduling Order (Doc. No. 41) required that Defendants obtain leave of the Court in order to supplement their Prior Art Statement after the January 7, 2008 deadline.

During the pendency of this proceeding, VistaPrint was involved in opposition proceedings before the European Patent Office's Opposition Division ("EPO") regarding a European equivalent patent of the '011 Patent. Defendants in this case were not involved in the European proceedings. On January 10, 2008, and February 29, 2008, three prior art references that disclosed three desktop publishing products—Corel Office for Java, Applix Anywhere, and Scitex

Netdog—were raised in the opposition proceedings. The EPO issued an Opinion on January 10, 2008, using Corel Office for Java and Applix Anywhere to support its finding that claim 1 of the European equivalent patent lacked an inventive step, and therefore, was not patentable in Europe. On February 29, 2008, the opponents in the proceedings—not the Defendants here—submitted another prior art reference disclosing the Scitex article to the EPO.

The patentee to the patents-in-suit did not disclose Corel Office for Java, Applix Anywhere, or Scitex to the USPTO upon its initial application. In addition, neither party cited this prior art in their initial prior art statements in this case.[3]

Defendants, as would be expected, assert that the prior art raised in the EPO opposition proceedings is important evidence bearing on the validity of the patents-in-suit. They contend that Corel Office for Java "essentially offered all the capabilities of Corel Office (*e.g.* Word Perfect) in a web environment . . . . The user could make . . . a Word Perfect document within his browser and work in the document with all the functionality that Word Perfect offered. The user had the ability to print the document that was created." (Defs.' Mem. of Law in Opp'n to VistaPrint's Mot. to Stay this Action Pending Reexamination of the Patents-in-Suit by the Patent Office ("Defs.' Opp'n Mem.") 8.) Defendants describe Applix Anywhere as "a Java applet that allowed a user to create and edit documents in a

---

[3]   Defendants contend that although they conducted extensive research and due diligence to locate and include relevant prior art references in their prior art statement, they were unaware of these three prior art references prior to the

web environment.  A user could make design choices for his document consistent with word processing or desktop publishing applications." (*Id.*)  Defendants describe Scitex as "another application that allows a user 'drag and drop' functionality over the Internet." (*Id.*)  Thus, Defendants assert that Corel Office for Java, Applix Anywhere, and Scitex constitute important prior art bearing on the validity of the patents-in-suit.

On May 2, 2008, Defendants filed a Motion for Leave to Amend [their] Prior Art Statement in order to add these newly discovered references.  (Doc. No. 79.)  After taking into consideration the EPO's Opinion and the timing of that Opinion, the Court granted Defendants motion and amended the Pretrial Schedule, allowing the parties to "exchange any amendments they wish to make to their respective Claim Construction Statements in their proposed construction of both undisputed and disputed claim terms, phrases, or clauses relating solely to the amendments made to Defendants' Prior Art Statement," and requiring the Amended Joint Claim Construction Statement to be filed by July 1, 2008.  (Doc. No. 93, June 12, 2008 Order.)  On June 24, 2008, Defendants provided VistaPrint with amended constructions of the claim terms "authoring program," "authoring tool," and "document."  VistaPrint objects to Defendants' changes as being beyond the scope permitted by the Court's June 12, 2008 Order, asserting the amendments are not related to the new prior art.

---

January 7, 2008 deadline.

On June 30, 2008, VistaPrint filed a Motion to Stay this Action Pending Reexamination of the Patents-in-Suit by the PTO. (Doc. No. 94.) VistaPrint has not yet filed a request for reexamination. However, VistaPrint represents that it intends to do so upon the Court's granting of the stay because it believes the PTO should consider Corel Office for Java, Applix Anywhere, and Scitex in the first instance "to make a determination as to whether [they raise] a substantial new question of patentability, and if so, to reexamine the patents in light thereof." (VistaPrint's Mem. of Law in Supp. of its Mot. to Stay 1.) Defendants oppose VistaPrint's motion.

Fact discovery closed in this case on June 30, 2008. (Doc. No. 86.) As of July 15, 2008, the date of the hearing on VistaPrint's Motion to Stay, there had yet to be an exchange of expert reports, any claim construction briefing or *Markman* hearing, or any briefing or hearing on dispositive motions.[4]

## DISCUSSION

**I.     Motion to Stay**

Patent reexamination is a statutory procedure by which the PTO reevaluates the patentability of an unexpired patent based on specific prior art patents or printed publications. *See* 35 U.S.C. § 302 ("Any person at any time

---

[4]     Parties are due to exchange initial expert reports by July 30, 2008, with rebuttals due to be exchanged by September 1, 2008. (Doc. No. 93, June 12, 2008 Order.)   All expert discovery, including expert depositions, are to be completed on or before September 30, 2008. (*Id.*)   The deadline for dispositive motions is November 3, 2008, and the case has a trial-ready date of February 1,

may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301 of this title."); 35 U.S.C. § 301 ("Any person at any time may cite to the Office in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."). A request for reexamination will be granted, and reexamination thereafter conducted, if the PTO determines that the cited prior art raises "a substantial new question of patentability." *See* 35 U.S.C. § 303(a) ("[T]he Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications."). The PTO's determination of whether a substantial new question of patentability is presented is to be made within three months of the request. *See* 35 U.S.C. § 303(a). A substantial new question of patentability exists when "there is a substantial likelihood that a reasonable examiner would consider the prior art . . . important in deciding whether or not the claim is patentable." Manual of Patent Examining Procedure § 2242(I) (8th ed., Rev. 6, 2007). Here, it is the plaintiff patentee (*i.e.*, VistaPrint) who would be seeking reexamination.

"Congress enacted the [PTO] reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available

---

2009. (Doc. No. 41, September 25, 2007 Pretrial Scheduling Order.)

and practical, should be deferred to by the courts." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (quotations omitted). "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Therefore, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp.*, 844 F. Supp. at 1381; *see also Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) ("[T]he sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office.") (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985)).

There are numerous advantages to staying a patent infringement action during the PTO's reexamination of the patents-in-suit:

(1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

(2) Many discovery problems relating to the prior art can be alleviated by the PTO examination.

(3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

> (4) The outcome of the re-examination may encourage a settlement without the further use of the Court.
>
> (5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> (6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.
>
> (7) The cost will likely be reduced both for the parties and the Court.

*E.g., Card Tech. Corp. v. DataCard Corp.*, Civil No. 05-2546 (MJD/SRN), 2007 WL 2156320, at *4 (D. Minn. July 23, 2007) (quoting *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992)).  Courts "routinely" grant such stays where the circumstances warrant.  *CNS, Inc. v. Silver Eagle Labs, Inc.*, No. Civ. 04-968 (MJD/JGL), 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004) (granting stay where case was "in the early stages of discovery and there are obvious efficiencies to be gained by focusing discovery and trial on the asserted patents as they exist after reexamination"); *see also*, *TimeBase Pty Ltd. v. The Thomson Corp.*, Civil Nos. 07-1687 (JNE/JJG), 07-4551 (JNE/JJG), 2008 WL 1959061, at *2 (D. Minn. May 6, 2008) (staying consolidated cases pending reexamination of the patents-in-suit); *Card Tech.*, 2007 WL 2156320, at *6 (granting defendant's motion to stay plaintiff's patent claims pending PTO reexamination proceedings of two of the three patents-in-suit); *VData, LLC v. Aetna, Inc.*, Civil No. 06-1701 (JNE/SRN), 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006) (granting a motion to stay litigation pending reexamination

proceedings); *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, No. 03-3364 (MJD/AJB), 2005 WL 2216317, at *1 (D. Minn. Sept. 8, 2005) (granting plaintiffs' motion to stay litigation pending reexamination).

Federal courts have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citation omitted). A court is not required to stay such actions; instead, the decision to do so is within the court's sound discretion. *NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005); *see also, e.g., VData*, 2006 WL 3392889, at *4. A stay pending reexamination may be justified if the reexamination likely will assist the court in determining patent validity or, if the claims are canceled, eliminate the need to consider issues of infringement. *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998).

Courts generally consider the following factors in deciding whether a stay would be appropriate:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and whether a trial date has been set.

*VData,* 2006 WL 3392889, at *5 (citing *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999)).

### A.     Simplification of Issues

The reexamination could reasonably alter the parameters of the litigation in this case. The PTO's Ex Parte Reexamination Filing Data, dated March 31, 2008, indicates that of the total *ex parte* reexamination certificates issued since 1981, 26% were issued with all claims confirmed, 10% were issued with all claims canceled, and 64% were issued with claims changes. (Doc. No. 105, Declaration of Tara F. Harkins ("Harkins Decl.") ¶ 9, Ex. G at 2.) Based on these statistics, it is more likely than not that reexamination will result in either changed or canceled claims. Here, the PTO might determine that some or all of the reexamined claims of the patents-in-suit are unpatentable in light of the new prior art. If so, those claims would be invalid and unenforceable in this action, resulting in no need to continue this action at all. *See Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, Civil Action No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165, at *2 (D. Colo. July 11, 2006) ("[A] decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes.") Knowing this sooner rather than later would save the Court and the parties a significant amount of time, effort, and expense. Moreover, the prior art-at-issue that Plaintiffs intend to submit to the PTO were not originally before the PTO and the technology claimed in the patents-in-suit is reasonably complex. Therefore, having the PTO's expertise in evaluating the claims and prior art-at-issue here will prove useful to

the Court.  *See VData*, 2006 WL 3392889, at *6 ("[I]f the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.") (quotations omitted).

In addition, the fact that the EPO determined that a European equivalent patent lacked an inventive step based on two of the three prior art references-at-issue supports a finding that there is a substantial likelihood that a reasonable examiner would consider the prior art important in determining whether or not the claims are patentable.  The resulting analysis and explanation by the PTO would be useful for the Court.  *See Broadcast Innovation,* 2006 WL 1897165, at *2 ("Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence.") (citing *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986)).

Defendants assert that the Court should deny a stay because VistaPrint's motion is designed to obtain an unfair tactical advantage because the nature of the reexamination process is *ex parte*.  But all patent applications are examined on an *ex parte* basis in the first instance.  *See, e.g., In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996) (referencing the *ex parte* process of examining a patent application).  Further, if Defendants want to be more intimately involved in the

reexamination of the patents-at-issue and provide an explanation for why they believe the prior art-at-issue invalidates the claims of the patents-at-issue, they can file their own reexamination request.  *See In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 532 n.6 (E.D. Pa. 2003) (noting that "Defendants were free to request reexamination 'at any time'") (quoting 35 U.S.C. § 302).

Defendants also contend that the issues before the Court will not be significantly simplified by reexamination because the PTO will not consider the prior public use of the actual products, the other art asserted by Defendants, evidence of deceptive intent, or arguments regarding enablement or lack of written description.  This Court agrees that these are issues that the Court eventually may have to address.  This does not, however, negate the fact that the Court will, at a minimum, benefit from the PTO's evaluation of the prior art-at-issue, which could assist the Court with both claim construction and validity issues in the future.  In addition, as explained above, there is a chance that some or all of the patent claims would be cancelled, which would eliminate the need for the Court to expend significant time and effort on these issues.

Because of the above, this Court concludes that it is likely that a stay will ultimately simplify the issues before the Court.

### B.   Stage of the Case and Undue Prejudice

Defendants assert that they have already incurred significant expense in defending this case and that they will be prejudiced by having to relitigate the

case under possibly new claims and a new prosecution history. However, expert discovery, claim construction briefing, summary judgment motions, pre-trial matters, trial, and post-trial matters all are yet to be done in this matter. Although this Court is sympathetic to Defendants' assertion that VistaPrint has known of the prior art-at-issue for months, it was not until recently that VistaPrint knew that the prior art-at-issue would be asserted against its United States patents here, and Defendants have shown no prejudice resulting from the nondisclosure of the prior art-at-issue. Fact discovery completed to date will still be useful as to noninfringement if any claims survive, and any arguments that Defendants may have regarding invalidity based on the prior art-at-issue will be preserved. Many courts have found it prudent to issue a stay in circumstances where the case was even further along. *See, e.g., Broadcast Innovation*, 2006 WL 1897165, at *9-10 (granting the defendants' motion to stay pending reexamination when dispositive motions were pending and trial was less than three months away); *3M Innovative Props.*, 2005 WL 2216317, at *3 (granting the plaintiffs' motion to stay litigation pending reexamination when discovery was closed and the court had already ruled on claim construction and all summary judgment motions); *Middleton, Inc. v. Minn. Mining and Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *5-6 (S.D. Iowa Aug. 24, 2004) (granting stay when trial was less than two months away and even though the case was more than eight years old).

Defendants also argue that they will be prejudiced by a stay because there will be "a cloud of uncertainty" over their business in the interim and a stay will cause a continued strain on their relationships with customers. Defendants have not shown, however, that they have actually lost any business because of the pendency of this suit. The only evidence of ongoing harm that Defendants point to is that Defendant 123Print Inc. has indemnified customers for any claims arising from the alleged patent infringement and VistaPrint used a press release at the start of this case.

The indeminification agreements do not support Defendants' arguments. If companies had declined to enter into business relationships with Defendants, even in light of the offers to indemnify, then Defendants may have an argument of some prejudice. Here they did not. Instead, it is undisputed that Defendants have actually expanded their businesses while this case has been pending. For example, Defendants' websites accused of infringement, including a website affiliated with a large office supply retailer, have had dramatic increases in traffic since this case has been filed. (Doc. No. 113, Decl. of Katherine A. Moerke in Supp. of VistaPrint's Reply to its Mot. to Stay this Action Pending Reexamination of the Patents-is-Suit by the PTO ¶ 3, Ex. 3.)

When this suit started, VistaPrint issued a press release that stated: "VistaPrint asserts that [Defendants] are infringing, and actively inducing their

customers to infringe . . . ." (Harkins Decl. ¶ 10, Ex. H at 1.)  Also in the press release, Robert Keane, president and CEO of VistaPrint is quoted as stating:

> As a leading innovator of online high-quality graphic design services, we believe competition fosters the growth of the market.  However, we must take action against companies that attempt to profit from our investment in intellectual property including our 13 issued U.S. patents and the dozens of additional patents pending in the U.S. and other countries.  By filing this suit, we are demonstrating our willingness to take legal action against companies who improperly use our technologies.

(*Id.*)  There is no evidence in the record that VistaPrint republished, or continues to publish, this press release.  And there is no evidence that Defendants have lost customers or lost profits due to the filing of this lawsuit or the issuance of the press release.  Therefore, this Court concludes that a stay would not unduly prejudice Defendants.

### C.     Dismissal is not an Alternative

Based on the fact that VistaPrint is the patent holder and the party who chose to file this case, Defendants assert that if VistaPrint chooses to seek reexamination, dismissal of this case is appropriate.  This Court disagrees.

The fact that VistaPrint seeks reexamination does not mean that the patents are invalid or presumed invalid, nor does it mean that VistaPrint concedes in any way that the prior art-at-issue reads on its patents or invalidates any of its asserted claims.  Moreover, Federal Rule of Civil Procedure 41 permits voluntary dismissal at a plaintiff's request or involuntary dismissal at a defendant's request "[i]f the plaintiff fails to prosecute or to comply with [the

Federal Rules] or a court order[.]"  There is no evidence that VistaPrint has failed to prosecute or failed to comply with the Rules or a court order.

### D.	Defendants' Proposed Conditions

Defendants argue that if the Court grants VistaPrint's motion to stay, the Court should impose certain conditions.  Specifically, Defendants argue that VistaPrint should be estopped from seeking injunctive relief and from asserting willful infringement.  This Court finds that such conditions are not appropriate here.  Defendants have cited no authority in support of imposing such conditions.  Even so, the elements for proving eligibility for injunctive relief and willfulness are not related to VistaPrint's request for a stay.  Simply because VistaPrint seeks a stay pending reexamination does not mean that it is precluded from showing irreparable harm.  In addition, willful infringement is based on Defendants' actions and knowledge of VistaPrint's patents.  The fact that the patents may be reexamined does not affect whether Defendants have willfully infringed upon those patents, nor does it imply that there is a prima facie case of unpatentability.  *See* Manual of Patent Examining Procedure § 2242(I) (8th ed., Rev. 6, 2007) ("It is not necessary that a 'prima facie' case of unpatentability exist as to the claim in order for a 'substantial new question of patentability' to be present as to the claim."); *see also In re Laughlin*, 265 F. Supp. 2d at 534 (stating that "the grant of a request for reexamination . . . does not establish a likelihood of patent invalidity").

## II. Objection to Defendants' Amended Claim Construction

As referenced above, VistaPrint objects to Defendants' June 24, 2008 amended constructions of the claim terms "authoring program," "authoring tool," and "document" as being beyond the scope permitted by the Court's June 12, 2008 Order. Because this Court recommends that VistaPrint's motion to stay should be granted, in a separate Order the Court denies as moot VistaPrint's objections, without prejudice to its refiling upon either the rejection of this Court's Report and Recommendation or the completion of the reexamination proceedings. Reexamination could result in the cancelation or amendment of claims. Judicial resources will be preserved if the Court awaits the outcome of the reexamination before making any claim construction rulings.

## III. Pretrial Scheduling Order

Because this Court recommends that VistaPrint's motion to stay be granted, this Court, in a separate Order, suspends all discovery and deadlines currently set in the September 26, 2007 Pretrial Scheduling Order (Doc. No. 41) and amended by the Court's June 12, 2008 Order (Doc. No. 93), while this Report and Recommendation is pending. If this Report and Recommendation is rejected and the stay is not granted, parties are to contact Jackie Phipps, Magistrate Judge Keyes' Judicial Assistant, at 651-664-5470, to schedule a conference whereby Magistrate Judge Keyes will thereafter issue an amended pretrial scheduling order.

## RECOMMENDATION

For the reasons stated, this Court recommends that:

1. Plaintiff's Motion to Stay this Action Pending Reexamination of the Patents-in-Suit by the PTO (Doc. No. 94) be **GRANTED** and the action be stayed for thirty days on the condition that VistaPrint submits to the PTO a request for reexamination of the patents-in-suit within thirty days.

2. If the condition set forth in paragraph 1 is met, this stay be automatically extended until the earlier of (a) a determination by the PTO that no substantial new question of patentability exists with respect to all of the patents-in-suit, or (b) the termination of all ensuing reexamination proceedings regarding the patents-in-suit.

Dated: July 24, 2008.

/s Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before August 7, 2008.